IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:09cr376

TIMOTHY LEE SCAIFE

### MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. § 3582(c)(1)(A) (ECF No. 152) and the supporting, opposing and reply memoranda (ECF Nos. 153, 158, and 161). Having considered those documents, the medical records, the Presentence Report (ECF No. 126), and the Worksheet in Response to Motion for Compassionate Release (ECF No. 138), it is hereby ORDERED that the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. § 3582(c)(1)(A) (ECF No. 152) will be denied.

### BACKGROUND

Pursuant to a plea of guilty entered on January 8, 2010, Timothy Lee Scaife pled guilty to distribution of five grams or more of cocaine base, commonly known as "crack." Although the Plea Agreement bound the United States to agree that Scaife should

be accountable for 149 grams of cocaine base, his drug distribution activities were far more extensive.

Authorities were investigating Scaife and, in the course of that investigation, a confidential informant purchased three controlled purchases of cocaine base. The three transactions were 5.732 grams, 6.76 grams, and 6.61 grams of cocaine base. As a result, the defendant was arrested and, on the same day, a search warrant of his home was executed and authorities recovered 169.904 grams of cocaine base, 4.7 grams of marijuana, 25 tablets containing N-Benzylpiperazine, $5,500.00 in United States currency, and glassware with suspected cocaine residue. The United States rightly did not argue that the quantum of accountability to which it had agreed in the Plea Agreement should be increased. However, for relevant conduct purposes at sentencing, the Presentence Report specified that Scaife was accountable for 7,778 kilograms of marijuana based on converted drugs and money (188.65 grams of cocaine base; $5,550.00 recovered from Scaife's home which converted to 200 grams of cocaine base; and 25 tablets of N-Benzylpiperazine.)[1]

Scaife qualified as a career offender under the Guidelines and he had a Criminal History Category VI. Scaife's criminal

---

[1] At sentencing, the defendant objected to the drug weight in the Presentence Report but counsel withdrew that objection.

history is an extremely serious one.  He was convicted of rape while in the military service of the United States in 1981.  He received no criminal history points for that conviction.  In 1986, he was convicted of sexual abuse involving force.  In 1992, he was convicted of criminal possession of a weapon; and, in 2001, he was convicted of possessing cocaine with intent to distribute it, possessing a firearm while in possession of drugs, possessing a firearm by a convicted felon, and eluding police in a dangerous way.

At the time of sentencing, the statutory mandatory minimum was a term of five years with a maximum term of 40 years.  The Guidelines sentence range was 188 to 235 months.  On March 26, 2010, Scaife was sentenced to 235 months imprisonment to be followed by four years of supervised release.  Scaife is serving his sentence at FCI Yazoo City Low and his projected release date is June 7, 2026.  As of the date the Government filed its papers in this case, none of the 1,739 inmates and none of the staff members at FCI Yazoo City Low were positive for COVID-19.  In the past, there were 285 inmates and 24 staff members at the facility who previously tested positive for COVID-19 and have since recovered; and 3,571 inmates and 408 staff members at the entire compound have been fully vaccinated (statistics are not available for just the Low section of the facility.

3

In the memorandum in support of his motion for compassionate release (ECF No. 153), Scaife argues that there are two predicates for his request for compassionate release that qualify as extraordinary and compelling reasons. First, he alleges that there is a significant disparity between the sentence that he received in 2010 and that which he would receive if sentenced today. Second, he alleges that he has serious medical conditions which substantially diminish his ability to provide self-care within the environment of a correctional facility, citing U.S.S.G. § 1B1.13. Although the supporting memorandum for the motion mentions rehabilitation, it does not actually assert rehabilitation as a ground for release. However, in his reply memorandum (ECF No. 161), Scaife elevates post-sentencing rehabilitation to a reason that constitutes an extraordinary and compelling circumstance for release.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate

4

release under § 3582(c)(1)(A)(i).  United States v. White, 378 F. Supp.3d 784, 785 (W.D. Mo. 2019).

## 1.   The Disparity Argument

As for the disparity in sentences, Scaife relies principally upon the decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).   That argument is substantially overstated.   The statutory range has indeed changed from a mandatory minimum of five years to a maximum of 40 years to a punishment with no mandatory minimum and a maximum of 20 years.   The difference in the guideline range between what would be imposed today and that which was applicable at the time of sentencing and which was used to arrive at sentencing, is a difference in range of 37 to 67 months.   That is hardly the disparity that was before the Court of Appeals in McCoy.

Scaife acknowledges that his Criminal History Category would be VI today as it was at the time of sentencing.   There is no doubt that Scaife's criminal history is egregious.   Considering the relevant conduct in this case and the criminal history, the disparity argued by Scaife is not sufficiently significant to warrant adjustment of the sentence by a grant of compassionate release.

### 2.   Rehabilitation Argument

As recognized in McCoy, post-sentencing rehabilitation certainly is a factor to be considered along with others in determining whether compassionate release is appropriate.  It is correct that Scaife has made great strides toward self-improvement and in educating himself for a life after incarceration in that he has completed his GED and a number of educational courses.  Of course, inmates are expected to engage in self-improvement; and, while Scaife's efforts are indeed commendable, they are not sufficient to overcome the sentence that was animated largely by egregious offense conduct and criminal history.

### 3.   COVID-19 Argument

Scaife argues that the presence of COVID-19 in prison and his health conditions (chronic kidney disease, hypertension, and obesity) present extraordinary and compelling reasons for compassionate release.  The argument does not carry the day.

#### A.   Particularized Susceptibility

The defendant has established that he suffers from chronic kidney disease, hypertension, and obesity.  The CDC recognizes that these risk factors can expose one to a greater risk of contracting COVID-19 if it is contracted.

6

However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons.  It appears from the record that the conditions on which Scaife bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release."  United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).   In addition, Scaife has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues.

Moreover, Scaife, like almost all inmates at FCI Yazoo City Low, has been fully vaccinated with the Pfizer-BioNTech vaccine and the Moderna booster.  The vaccine has proven effective in reducing the risk of contracting COVID-19 and the risk of serious consequences if it should be contracted.  That fact, the high level of those vaccinated at FCI Yazoo City Low, and the de minimus number of cases reported at FCI Yazoo City Low, viewed in perspective of the record about Scaife's claimed health

7

conditions, strongly operate to preclude a finding that the particularized susceptibility test is met here.

In sum, Scaife has not met the particularized susceptibility risk facet of the applicable test.

### B.   Particularized Facility Risk

Nor has Scaife met the particularized facility risk component of the appropriate test.  His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Yazoo City Low, the defendant's facility of incarceration.  Further, the record reflects that, at the time of the filing of the Government's papers, FCI Yazoo City Low had zero active case of COVID-19 among inmates, zero active cases of COVID-19 among staff, and 285 inmates and 24 staff members who had previously recovered from COVID-19.   Additionally, he has contracted COVID-19 twice.  Significantly, he does not argue that, on either of those occasions, his health conditions have worsened.

On this record, Scaife has not met the particularized facility component of the applicable test.

8

4.   **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Scaife had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community.   The defendant argues that he is not a danger to the community.   That, he says, is because: FCI Yazoo City Low has given him a First Step Act Recidivism Assessment classification of low; the absence of violence related infractions while in prison; and people over 50 (Scaife is just over 61) have a low (9.5%) recidivism rate.   (ECF No. 153).

The prison classification, recidivism factor, and the absence of violence-related infractions while in prison tend to support Scaife's argument that he is not a danger to the safety of any other person or the community.   And, the recidivism studies from the Sentencing Commission also tend to support that position. However, Scaife had a lifetime of crime before he entered prison for the offense of conviction here.   At 18, he committed rape of another service member and served a prison term of three years.   A

9

year after release from prison on that charge, he committed forcible sexual abuse and was given a sentence of two years and four months to seven years.

After serving that term of imprisonment, Scaife, then 29, in 1991, was convicted of criminal possession of a weapon in the third degree and sentenced to two to four years imprisonment to be served consecutively (apparently to the sentence then being served because his parole was revoked). The circumstances of that offense are described vividly at pages 11 through 13 of the Presentence Report, ECF No. 126 and they disclose that Scaife was not only in possession of the weapon but that the possession occurred during an encounter with a police officer who ordered the defendant to drop the weapon and the defendant did not. Then, at age 38, Scaife was convicted of possession of cocaine with intent to distribute it and received a lenient two year prison sentence (that was suspended) while at the same time being convicted of possessing a firearm while in possession of drugs and possession by a felon for which he was sentenced to five years in prison.

This criminal history qualified Scaife for a career offender enhancement. More importantly, for today's case, it teaches that he is a person of violence and the factors that he cites in support of the assertion that he is not a danger to the community just do not stand up when measured again the demonstrated propensity for

10

violence over a good part of the defendant's adult life.  So, the
Court finds that he has not proved that he is not a danger to the
community.  The record actually speaks to the contrary.

The first factor of § 3553(a) is the nature and consequences
of the offense.  Scaife is a convicted drug dealer of significant
proportions and the offense is an extremely serious with serious
consequences.   He   distributed   substantial   poison   into   the
community.

The next factor is the history and characteristics of the
defendant.   It   seems   rather   fairly   established   that   Scaife
experienced an extremely difficult childhood and that he was
sexually abused when he was five years old and, as a result,
contracted a sexually transmitted disease.  Further, he was later
sexually abused by his uncle.  No doubt a difficult childhood that
is littered with sexual abuse is ground for compassion in a general
sense.  But, it weighs little in the calculation of the impact of
the history and characteristics analysis unless it is somehow
linked causally with the offense of conviction.  Here, the record
shows no linkage other than a general assertion that childhood
trauma interferes with normal development of the brain.  The record
contains no indication that the childhood circumstances of Scaife
had anything to do with the offense of conviction.

11

In a related argument, Scaife recites extensive efforts toward rehabilitation with the Bureau of Prison (ECF No. 153, pp. 17-20). And, indeed, he has performed well in prison having no infractions. That, of course, is what is expected, albeit it is not the norm. He has led a productive life while in prison and has both trained and educated himself to assist in his return to society. Those efforts toward rehabilitation are significant and they will stand Scaife in good stead when he is released. But they do not overcome the serious nature of the offense of conviction and the serious criminal history that the defendant has built for most of his life. It certainly does not overcome the risk to the public and the need to punish him fully to achieve deterrence.

Next, Scaife cites his pressing health needs citing 18 U.S.C. § 3553(a)(2)(D) alleging that his medical conditions (which have been previously addressed) make him unable to attend to his needs while in prison. The record is devoid of any proof to that end and, in addition, the record suggests that he is receiving adequate treatment for his medical conditions while in prison. In that regard, it is significantly notable that there is no record that his conditions worsened notwithstanding that he twice contracted COVID-19 (notwithstanding that he was vaccinated). That supports the conclusion previously reached the efficacy of the vaccines as

12

well as the fact that, contrary to his naked assertions, his conditions are being adequately managed while in prison.

In sum, the factors of § 3553(a) strongly counsel that the current sentence is necessary to protect the public, deter the defendant, and to promote respect for the law. It was sufficient but not greater than necessary to achieve all sentencing statute objectives when imposed and it remains so to this date.

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. § 3582(c)(1)(A) (ECF No. 152) will be denied.

It is so ORDERED.

/s/   _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October _17_, 2023

13